Regina et al. *v.* Monroe County, Appellant.

Argued April 16, 1935.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

258

*F. B. Holmes,* County Solicitor, for appellant.

*C. D. Shull,* with him *C. C. Shull* and *James T. Kitson,* for appellee.

OPINION BY MR. JUSTICE DREW, May 13, 1935:

Plaintiff is the owner of about 99 acres of land in Monroe County. On this land he and his wife maintained a hotel or boarding house, also used by them as a residence, the front of which faced upon a state highway running from Milford to Stroudsburg. In May, 1927, parts of this road were relocated by the Commonwealth, for the purpose of eliminating curves, and at plaintiff's property its bed was shifted so as to run in the rear of the boarding house. The road was further improved by the rebuilding of its surface, concrete replacing the former macadam. In making the relocation the Commonwealth appropriated a strip of plaintiff's land approximately two thousand feet long by fifty feet wide, removed a barn or wagon shed, an ice house and a hog pen, and cut down several fruit and shade trees. As a result of the relocation the road separates the house from a building which is used as a barn or garage, and most of the motor traffic, from

which plaintiff has been accustomed to draw trade, now passes in the rear of the boarding house, which presents a less attractive appearance to the new highway, its kitchen facing in that direction. The old road in front of the house remains, connecting the new highway with a road to Shawnee. Damages were awarded plaintiff by viewers, and, the defendant county having appealed from that award, a verdict of $3,000 in plaintiff's favor was returned by the jury. From the judgment entered against it the county has taken this appeal.

Appellant complains of the admission of testimony of several of plaintiff's expert witnesses and of portions of the charge based thereon. These witnesses testified that, in ascertaining the fair market value of the property after the relocation, they took into consideration the probable loss of business to the boarding house from the changed location of the road. This, appellant contends, was an improper inclusion of loss of anticipated profits in the measure of damages. It is true that a specific estimate of future profits cannot constitute a separate item of damages in fixing the compensation to be awarded in cases of this kind: P. R. R. Co. v. Eby, 107 Pa. 166; Hamilton v. Pgh., etc., R. R. Co., 190 Pa. 51; Phila. Ball Club v. Phila., 192 Pa. 632; see Iron City Automobile Co. v. Pgh., 253 Pa. 478. It is equally true, however, that decrease or loss of business as a result of a condemnation is an appropriate factor to be considered in determining the depreciation in the fair market value of the property: Western Pa. R. R. Co. v. Hill, 56 Pa. 460; Pa. Schuylkill Val. R. R. Co. v. Ziemer, 124 Pa. 560; see Pgh., Va. & Charleston Ry. Co. v. Vance, 115 Pa. 325. Likewise, the necessary expenditure involved in restoring the property to a fit condition for continuing the business or other former use may be considered, not as a specific item of damage, but as affecting the market value: Kersey v. R. R. Co., 133 Pa. 234; Patton v. Phila., 175 Pa. 88; Coons v. McKees Rocks Boro., 243 Pa. 340; Parry v. Cambria & Indiana R. R. Co., 247 Pa. 169. So, also, the

inconvenience arising from a division of the property and the danger therefrom to persons or cattle passing from one part to another, along with other factors which are likely to affect the "convenient use and future enjoyment of the property," may properly be considered in so far as the market value is affected thereby : see Pgh., Bradford & Buffalo Ry. Co. v. McCloskey, 110 Pa. 436, 442-3 ; Setzler v. R. R. Co., 112 Pa. 56, 65 ; Port v. R. R. Co., 168 Pa. 19, 27. It appears clearly from the testimony complained of, most of which was elicited on cross-examination, that the consideration given these various elements by plaintiff's experts was with regard to their effect on the market value of the property. In the words of one witness, these factors were considered "from the angle of sales proposition as to what influence these changes would have on a prospective customer." A jury might reasonably infer that the changes suffered in plaintiff's premises would materially affect its value to a prospective customer, and it cannot be denied that the relocation of the road was responsible for the changes.

In Hedrick v. Hbg., 278 Pa. 274, and Bodemer v. Northampton Co., 101 Pa. Superior Ct. 492, it was held that a hotel owner was entitled, by the Acts of May 28, 1913, P. L. 368, and June 27, 1913, P. L. 633* (providing for damages for the vacating of roads and streets), to have the deprivation of access and consequent diversion of traffic caused by the vacation of a road or street considered in the determination of the fair market value of the property. In Fecher v. Allegheny Co., 313 Pa. 191, we held that an owner of residential property not shown to have business value could not recover for a vacation of a street which simply made access slightly less convenient. In pointing out that the facts there were not analogous to those of the Hedrick and Bodemer cases we said : "In both instances, it will be observed, the property derived

---

* These acts were repealed by the Act of May 2, 1929, P. L. 1278, but the relevant portions were substantially reënacted by section 514 of that act.

an important element of its value for the use to which it was put from its location along the stream of traffic. This is not true of plaintiff's property." In the case before us, an important element of the value of the premises as a hotel or boarding house was derived from its location along the stream of traffic, and there is no doubt that that value might well be lessened in the eyes of a purchaser as a result of the relocation of the road. Clearly, the admission of the testimony complained of was not error, nor was the charge based thereon improper.

Appellant further objects to the testimony of plaintiff's experts, claiming that they reached their conclusions as to the depreciation in market value by adding together separate items of damage, and that this was contrary to the doctrine of McSorley v. Avalon Boro. School Dist., 291 Pa. 252. We there held that it was improper for witnesses, on direct examination, to give the value of the land, and of the buildings thereon, as separate items, and to fix the sum of these items as the market value of the whole property prior to the taking. We said: "The testimony, in chief at least, must be limited to the property in its entirety, as it was at the time of the taking." In the instant case, the testimony in chief was altogether within that rule. Only when led into it upon cross-examination by appellant's counsel did plaintiff's experts allocate specific values to separate items, and appellant will not now be heard to complain of matter elicited by its own cross-examination: see Curtin v. Nittany Val. R. R. Co., 135 Pa. 20, 31. Nor may appellant complain of the experts' deduction of these items of damage from the original market value for the purpose of determining the diminished value. Such deduction is expressly authorized by section 527 of the Act of May 2, 1929, P. L. 1278, which provides that in eminent domain proceedings of the sort here involved it shall be competent for duly qualified witnesses "in arriving at their opinion as to the market value immediately after the exercise of the right of eminent domain, to add to their

opinion of the market value before such exercise the cost or value of all the elements of benefit or advantage, and to deduct therefrom all disadvantages or damage, in order to arrive at the market value after such exercise of the right of eminent domain and as affected thereby." We are convinced that the various factors affecting market value were given proper consideration in the experts' testimony as well as in the charge, and that the verdict was not excessive. The judgment must therefore be affirmed.

Judgment affirmed.